AO 106 (Rev. 04/10) Application for a Search Warrant        AUTHORIZED AND APPROVED/DATE:  EMJ 3/12/2024

# UNITED STATES DISTRICT COURT
for the
Western District of Oklahoma

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )      Case No. MJ-24- 221-AMG
INFORMATION ASSOCIATED WITH THE CELLULAR DEVICE ASSIGNED )
CALL NUMBER 405-496-5748, WITH INTERNATIONAL MOBILE SUBSCRIBER )
IDENTITY / ELECTRONIC SERAL NUMBER 310280017459450, THAT IS IN )
THE CUSTODY OR CONTROL OF AT&T )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, which is attached and incorporated by reference herein.

located in the _____Western_____ District of _____Oklahoma_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, which is attached and incorporated by reference herein.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. s. 841(a)(1) & (b)(1)(C) | Distribution of Fentanyl Resulting in Death |

The application is based on these facts:
See the Affidavit of DEA Special Agent Brook Wilson, which is attached and incorporated by reference herein.

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Brook Wilson, Special Agent, DEA
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 3/12/24

*Judge's signature*

City and state: Oklahoma City, Oklahoma        AMANDA MAXFIELD GREEN, U.S. MAGISTRATE JUDGE
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT

I, Brook J. Wilson, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I make this Affidavit in support of an application for a search warrant for information associated with a certain cellular telephone assigned call number (405) 496-5748, with International Mobile Subscriber Identity/Electronic Serial Number 310280017459450 (hereinafter, the "**TARGET PHONE**"), that is stored at premises controlled by AT&T, a wireless telephone service provider headquartered at 11760 US Highway 1, Suite 300, North Palm Beach, Florida 33408. The information to be searched is described in the following paragraphs and in Attachment A. This Affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) to require AT&T to disclose to the government copies of the information further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate items described in Section II of Attachment B.

2. I am a Special Agent with the Drug Enforcement Administration ("DEA") currently assigned to the Oklahoma City, Oklahoma District Office. As such, I am an investigative and law enforcement officer of the United States authorized to conduct investigations of, and to make arrests and seizures for, offenses enumerated in the Controlled Substances Act, Title 21, United States Code.

3. I have been a Special Agent since October of 2014, having previously worked as a United States Border Patrol Agent from 2006 until 2014. After successfully completing the DEA training academy at Quantico, Virginia, I was assigned to the Sierra Vista Resident Office in Sierra Vista, Arizona. In October of 2019, I was transferred and currently work in the

Oklahoma City District Office in Oklahoma City, Oklahoma. I am currently assigned to the Tactical Diversion Squad.

4. During my employment in law enforcement, I have received training and conducted investigations related to illicit drugs and the distribution of illicit drugs, in violation of Title 21, United States Code, Sections 841(a)(1), 843(b), 846, and others. I have participated in many aspects of drug investigations to include the following: undercover operations, surveillance, Title III investigations, search warrants, arrests, reviewing taped conversations and drug records, along with debriefing defendants, informants, and witnesses who had personal knowledge regarding major narcotics trafficking organizations.

5. The statements contained in this Affidavit are based in part on information provided by DEA and other law enforcement officers, either directly or indirectly through their reports or affidavits, and investigations conducted by law enforcement officers.

6. The facts in this Affidavit come from my observations, training and experience, and information obtained from other agents and witnesses. This Affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not include each fact known concerning this investigation.

7. Based on my training and experience and the facts as set forth in this Affidavit, there is probable cause to believe that violations of 21 U.S.C. §§ 841(a)(1) and 846 (Distribution of Fentanyl and Drug Conspiracy) have been or are being committed by Kalub Robinson, Jordan Stickney, Colton Everhart, and others yet unknown causing the death of Morgan Kemery. There is also probable cause to search the location described in Attachment A for evidence of these crimes and contraband or fruits of these crimes, as described in Attachment B.

## PROBABLE CAUSE

8.  On December 5, 2023, officers with the Blanchard Police Department ("BPD") responded to 619 N. Monroe, Blanchard, Oklahoma 73010 (located within the Western District of Oklahoma) in reference to an unresponsive female at the residence. Upon arrival at the residence, it was determined that the subject, Morgan Kemery ("Kemery"), was deceased. A search of the area surrounding Kemery revealed a cellular telephone belonging to Kemery, the **TARGET PHONE**, a bundle of white bar tablets, and a piece of tinfoil with residue that appeared to have been used recently. Believing this to be a scene of a suspected fentanyl overdose death, BPD contacted the DEA Oklahoma City District Office, Tactical Diversion Squad.

9.  On December 6, 2023, investigators with the DEA responded to assist and were able to conduct a field test of the tinfoil collected by BPD. The residue on the tinfoil tested presumptively positive for the presence of fentanyl. The bar tablets seized appeared to investigators to be counterfeit, Xanax-styled benzodiazepines and did not presumptively test for fentanyl. BPD gave investigators the **TARGET PHONE** with the passcode that had been provided by Kemery's boyfriend. Investigators were able to identify Facebook Messenger messages (utilizing Kemery's Facebook username "Morgan Kemery" with Facebook account "morgan.kemery.3") between Kalub ROBINSON and Kemery on December 4, 2023 within the **TARGET PHONE**. In these messages, ROBINSON and Kemery discuss needing to be careful around fentanyl, as well as the prices for Xanax tablets. Additionally, investigators located a pending CashApp transaction between Kemery and an account with the name Kalub Lynn Robinson for $21 on December 4, 2023 at 2:21 a.m. This is the only Cashapp transaction identified on December 4, 2023.

10. Investigators identified Dalton Vance ("Vance") as one of the last people who had been with Kemery, based on information in Kemery's cellular telephone. Vance was identified by law enforcement as a long-time friend of Kemery. After an interview conducted with Vance, investigators spoke with Vance's mother, Misty Janke ("Janke"), who reported that she had an hour-long conversation with Kemery the night prior to Kemery's death. Janke stated that she knew some people who might be of interest to investigators based on her knowledge of the substance abuse issues of Kemery and her friends/associates. Janke provided the name Jordan Stickney ("Stickney") as an associate of Kemery. Investigators located Stickney at her residence, and she agreed to assist investigators in any way possible.

11. Stickney stated that she has an addiction to fentanyl and that she uses approximately 20 fentanyl tablets a day. Stickney stated that Kemery visited her (Stickney) shortly before Kemery's death to obtain some fentanyl, but that she (Stickney) did not provide Kemery with any fentanyl. Stickney stated that Kemery then met with ROBINSON, which was later corroborated by investigators when ROBINSON's address was located in the recent searches within a GPS application in the **TARGET PHONE**.

12. Investigators located ROBINSON at his residence. Task Force Officer Tim Spratt read ROBINSON his *Miranda* rights, and ROBINSON agreed to speak with investigators. ROBINSON stated that, on December 4, 2023, he sent Kemery (via his cellular telephone) his address and that he and Kemery had subsequently smoked fentanyl together that ROBINSON had provided. ROBINSON confirmed the CashApp transaction between himself and Kemery but stated that the $21.00 was payment for the fentanyl that they smoked together, as well as money for him (ROBINSON) to play a game on his cellular phone. Investigators then showed ROBINSON the Facebook Messenger messages between himself and Kemery on the morning of

December 4, 2023, subsequent to their meeting the evening prior. In this message string, ROBINSON is using Facebook username Kalub Robinson with Facebook account "kalub.Robinson" with a picture of ROBINSON attached to the account.

> **ROBINSON: U good? Hey (waving hand emoji)**
>
> **KEMERY: yes!!!**
>
> **ROBINSON: Like it**
>
> **ROBINSON: ?**
>
> **KEMERY: yes, sorry I've been on the phone with probation and making doctors appointments but I'm all good and being careful with it!**

13. ROBINSON provided a cellular telephone to investigators and identified it as his cellular telephone (which is the pink iPhone now in the possession of DEA). ROBINSON gave investigators the passcode to his cellular telephone and provided it to investigators. ROBINSON stated that he had only been utilizing that cellular telephone for a few days because he broke his previous phone some time during the past weekend (December 2-3, 2023). ROBINSON showed investigators messages in his cellular telephone between himself and Stickney via the Facebook Messenger app. Stickney was utilizing Facebook username "Jordan Stickney," with Facebook account "100005482546155" on December 6, 2023. In the messages he showed investigators, ROBINSON and Stickney discussed using illicit drugs together and detailed how Kemery had interacted with them both (ROBINSON and Stickney) about fentanyl. Stickney wrote, "She was gonna get it no matter what." ROBINSON was subsequently arrested on tribal charges for distribution of fentanyl, and his cellular telephone was seized by DEA investigators.

14. On January 2, 2024, investigators received records from AT&T, based on an administrative subpoena submitted for cell phone number (405) 496-5748. This phone number was confirmed via investigators by searching the **TARGET PHONE**. The subscriber is listed as Robert W. Harden with an address of 3305 N. McKinley Ave., Oklahoma City, Oklahoma 73118 and a billing party of Kemery Contracting LLC at 15200 E. Imhoff Rd., Norman, Oklahoma 73026. Kemery Contracting LLC is operated by Patrick Kemery, Morgan Kemery's father. The IMSI was identified as 310280017459450.

15. The historical cell site data associated with the **TARGET PHONE** will assist in corroborating Kemery's movements over the days of December 3 through 5, 2023, which is currently suggested by Facebook Messenger messages and interviews.

16. Based on the aforementioned facts, I believe that the **TARGET PHONE**, in the possession of Kemery, was utilized for the distribution and conspiracy to distribute fentanyl and that Kemery would have been in possession of the **TARGET PHONE** during the time period of the distribution.

## AT&T BACKGROUND INFORMATION

17. In my training and experience, I have learned that AT&T is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart,

even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate location of the cellular telephone but is typically less precise than other types of location information, such as E-911 Phase II data or Global Positioning Device ("GPS") data.

18. Based on my training and experience, I know that AT&T can collect cell-site data about the **TARGET PHONE**. I also know that wireless providers such as AT&T typically collect and retain cell-site data pertaining to cellular phones to which they provide service in their normal course of business in order to use this information for various business-related purposes.

19. Based on my training and experience, I know that AT&T also collects per-call measurement data, AT&T also refers to as the "real-time tool" ("RTT"). RTT data estimates the approximate distance of the cellular device from a cellular tower based on the speed with which signals travel between the device and the tower. This information can be used to estimate an approximate location range that is more precise than typical cell-site data.

20. Based on my training and experience, I know that wireless providers such as AT&T typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless telephone service. I also know that wireless providers such as AT&T typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular phone and other transactional records, in their normal course of business. In my training and

7

experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the **TARGET PHONE**'s user or users and may assist in the identification of co-conspirators and/or victims.

## AUTHORIZATION REQUEST

21. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

22. I further request that the Court direct AT&T to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control. Because the warrant will be served to AT&T, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

23. I further request that the Court order that all papers in support of this application, including the Affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation, including by giving targets an opportunity to destroy or tamper with evidence, change patterns of behavior, notify confederates, and flee from prosecution.

Respectfully submitted,

Brook Wilson
Special Agent
Drug Enforcement Administration

Subscribed and sworn to before me on _March 12_, 2024.

AMANDA MAXFIELD GREEN
UNITED STATES MAGISTRATE JUDGE

9

## ATTACHMENT A

### Property to Be Searched

This warrant applies to records and information associated with the cellular telephone assigned call number (405) 496-5748 with International Mobile Subscriber Identity/Electronic Serial Number 310280017459450 ("the Account"), that are stored at premises controlled by AT&T ("the Provider"), headquartered at 11760 US Highway 1, Suite 300, North Palm Beach, Florida 33408.

## ATTACHMENT B

### Particular Things to be Seized

**I. Information to be Disclosed by the Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A for the time period December 1, 2023 to December 5, 2023:

    a. The following information about the customers or subscribers of the Account:

        i. Names (including subscriber names, usernames, and screen names);

        ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

        iii. Local and long distance telephone connection records;

        iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

        v. Length of service (including start date) and types of service utilized;

        vi. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

        vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

      viii. Means and source of payment for such service (including any credit card or bank account number) and billing records.

b. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Account, including:

      i. the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

      ii. information regarding the cell tower and antenna face (also known as "sectors") through which the communications were sent and received: as well as per-call measurement data (also known as the "real-time tool" or "RTT" data).

## II. Information to be Seized by the Government

All information described above in Section I that constitutes evidence, fruits, contraband, and instrumentalities of violations of 21 U.S.C. §§ 841(a)(1) and 846 (Distribution of Fentanyl and Drug Conspiracy), involving Morgan Kemery, during the period December 1, 2023 to December 5, 2023.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.